Adam Jodys died intestate on July 31, 1933. On October 1, 1935, the circuit court, affirming an order of the probate court, entered a judgment finding John Jodys, a brother, to be the sole heir of said deceased. Counsel for appellees then moved that the judgment be set aside, contending that other heirs existed in addition to the said John Jodys, which motion was granted and a period of 90 days allowed in which to obtain proof of the existence of the claimed additional heirs. A commission to take testimony issued pursuant to the provisions of 3 Comp. Laws 1929, § 14161, and in accordance therewith the depositions of Antanas Markunas, Jonas Sankauskas, Jonas Juodis and Antanas Juodis, residents of Lithuania, were taken and received in evidence. Based upon the testimony contained in said depositions, the trial court found some 22 persons to be heirs of the deceased, all residents of Lithuania, in addition to John Jodys.
If the court was not in error in admitting the mentioned depositions in evidence, the findings and judgment must be affirmed.
Objections by appellant to the notice of taking, to the manner of taking, and to the manner of certifying and returning said depositions were filed within 10 days after knowledge or notice of the return thereof (3 Comp. Laws 1929, § 14163), the objections having been filed on January 13, 1936, and at the same time a motion for the suppression of the same was filed by appellant. Notice of the filing of such objections and motion and of hearing thereon was within five days served upon the attorney for the appellees, the hearing on said motion being noticed *Page 51 
for the date of the resumption of the trial of the cause, which trial, as a matter of fact, was resumed on January 29, 1936.
It is contended by appellees that this practice was not in accordance with the provisions of Court Rule No. 31, § 1 (1933), which reads in part:
"Objections to notices of, and objections to the manner of taking, certifying or returning depositions shall be noticed for hearing before the court, by motion to suppress or otherwise by the party making the same, within five days after such objections are made, and if not so noticed for hearing the same shall be considered waived."
We hold that appellant complied with Court Rule No. 31, § 1 by the filing of his objections and motion and noticing the same for hearing in the manner aforesaid.
The statute provides for the taking of depositions and for the manner of taking, certifying, returning and filing thereof. 3 Comp. Laws 1929, §§ 14155-14169, inclusive. Depositions being admissible in evidence only by reason of the statute, the terms thereof must be complied with as the proceedings are in derogation of the common law.
It is contended by the appellant that the trial court erred in admitting the depositions in evidence, assigning reasons therefor so numerous that neither time nor space will permit mention of all of them. Those meriting discussion, however, will be given due consideration.
Appellant contends that the court erred in admitting the depositions in evidence:
1. Because the commission for the taking of the depositions which issued out of the circuit court for the county of Wayne did not have section 9 of *Page 52 
chapter 17 of the judicature act (3 Comp. Laws 1929, § 14163) printed thereon as required by 3 Comp. Laws 1929, § 14161, which contains the following provision:
"In any case where the deposition of a witness can be taken upon notice, his deposition may instead be taken under commission, upon which section nine of this chapter shall be printed."
The foregoing provision of the statute was not complied with in the instant case. A copy of said section 9 was neither printed nor written upon the commission, nor attached thereto, as is shown by the record.
We must hold that the wording of 3 Comp. Laws 1929, § 14161, requiring the commission for the taking of depositions to have printed thereon section 9 of chapter 17 of the judicature act, is unambiguous and mandatory. There is every reason for the commissioner empowered with the duty of taking depositions to be informed of the provisions of the statute with which he is required to comply, and it affords the best of reason that this section should be printed upon his commission for his guidance and control in the taking of the depositions and as to the manner of certifying and returning the same to the proper officers. Appellant's motion to suppress the depositions should have been granted by the trial court.
This holding compels a reversal of the case. However, other errors are assigned which we deem to be well taken and if a new trial is to be had we think it advisable to discuss them so that there will not be a recurrence of the same. They are as follows:
2. Because the depositions are irrelevant, incompetent, and immaterial since they relate to a family known as Jodys, also known as Juodis, Jordys, *Page 53 
Youdis and Juodis, evidently a family other than that involved in this estate.
A careful review of the record shows nothing to indicate that the deceased had any alias or was ever known by any other name than that of Adam Jodys. Practically all of the questions propounded to the witnesses in Lithuania assume that Adam Jodys was also known as Juodis, Jordys, Youdis and Juodis, and that former residents of Lithuania bearing the latter names were ancestors or relatives of decedent. We are unable to find that there was any evidence in the case that would justify such assumption in the interrogatories propounded to the various Lithuanian witnesses, and therefore hold that the interrogatories containing this assumption were incompetent and objectionable.
3. Because the testimony of the witness Antanas Markunas is irrelevant, incompetent and immaterial, and does not relate to the estate of Adam Jodys, deceased.
The deposition of the witness Antanas Markunas shows that he prepared a document known as exhibit "A" which purports to be attached to his deposition being what is termed the "table of kinship," and he claims it is a true and correct statement of the family history of Adam Jodys. He states that he obtained the documents which he used in preparing the so-called "table of kinship" from relatives of Adam Juodis, that he knew of no other family in his community bearing the names of Joseph and Agatha Juodis who had children by the names of Adam, John, Josephine, etc., but did not know about the whole district. In short, all of the testimony given by this witness was based upon information received from various people of whom he made inquiry, was clearly hearsay, and his inquiries were made upon the assumption that the decedent was also known by *Page 54 
the various aliases herein referred to. None of this testimony was admissible.
4. Appellant asks that the depositions of the witnesses, Jonas Sankauskas, Jonas Juodis, and Antanas Juodis be suppressed and stricken from the record (a) because the procedure of examining them in a body is not in accordance with the procedure followed in the courts of this State; (b) because they were not examined individually; (c) because the answers are not those of each individual witness, but their collective statements; (d) because their testimony is irrelevant, incompetent, and immaterial, not pertaining to the issues in this matter, and not relating to the estate of Adam Jodys, deceased, but apparently to another family.
If appellant's objections to the depositions of the witnesses Jonas Sankauskas, Jonas Juodis and Antanas Juodis are not to be sustained we will have an innovation in the manner of taking testimony both in open court and by deposition. It appears from the record that these three witnesses, two of them being brothers and the other a brother-in-law, were sworn jointly, and that interrogatories 4 to 83, inclusive, were propounded to all of them and that all answered in unison. It is inconceivable to believe that these three witnesses, one of them related to the Juodis family by marriage only, would all collectively answer the 79 questions in identically the same language. This could only happen where the witnesses had together determined in advance the answers they would give. The testimony was taken by the commissioner asking the witnesses collectively a certain question. The answer was in each instance preceded by the words "they say," and then followed what purported to be the collective answer of all three witnesses. It is also worthy of *Page 55 
note that practically the first question asked of these witnesses collectively was, "What relation are you to Adam Jodys, also known as Juodis, Jordys, Youdis, Juodis who died in Detroit, Michigan, U.S. A.?" which assumed that the decedent was known by these various aliases. It was assumed in questions following that persons by the names of Juozapas and Agota Juodis were the parents of decedent. In fact, in practically every question propounded to these witnesses an assumption was contained in the question that deceased persons, formerly residents of Lithuania, bearing the name of Juodis, Jordys, Youdis and Juodis were relatives of decedent. None of the witnesses testified to a fact within his own knowledge that would justify such a conclusion without the aid of the assumption contained in the interrogatories.
We are constrained to hold that much of this testimony of the last named witnesses was objectionable on the grounds of irrelevancy and incompetency, and that the procedure of examining the three witnesses in a body and taking their collective answers as the answer of each is not in accordance with the procedure followed in the courts of this State, and that the testimony so taken is not the individual testimony of each of the said witnesses, that it should be suppressed and the depositions stricken from the records.
Reversed and remanded with a new trial. Costs to appellant.
FEAD, C.J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred. *Page 56